606 F.Supp. 316 (1985)
Bessielove LEE, Plaintiff,
v.
UNION ELECTRIC COMPANY, Union Electric Retirement Plan, Defendants.
No. 83-2547C(3).
United States District Court, E.D. Missouri, E.D.
March 26, 1985.
*317 Kenneth J. Heinz, St. Louis, Mo., for plaintiff.
Schlafly, Griesedieck, Ferrell & Toft, Francis X. Duda, St. Louis, Mo., for defendants.

MEMORANDUM
HUNGATE, District Judge.
Plaintiff, the widow of a former Union Electric Company employee, brings this action under the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001, et seq., to recover survivor benefits allegedly owed to her by virtue of Union Electric Company's retirement plan. Plaintiff alleges that defendants violated their duty under ERISA accurately to inform participants of their rights and obligations under the plan, thereby causing plaintiff's husband to fail to make an election for survivor benefits for plaintiff.
A nonjury trial was held on January 3, 1985.

Findings of Fact
1. Plaintiff, Bessielove Lee, is an individual who resides in the Eastern District of Missouri and is the surviving spouse of Guy Lee, who died on July 19, 1983, at age 61.
2. Defendant, Union Electric Company (the Company), is a Missouri corporation and was at all times the sponsor and administrator of defendant Union Electric Retirement Plan (Plan).
3. Except for those periods of time during which he served in the armed forces, Guy Lee was employed by the Company from 1940 through his death in 1983. Mr. Lee was a participant in the Plan at issue.
4. Prior to the enactment of ERISA, the Company's Plan provided for the payment of retirement income, to qualified retirees, in the form of a life annuity with monthly payments until time of death. However, if an employee affirmatively elected a "Contingent Annuity Option," available under the Plan, and the option was in effect at *318 the employee's death, monthly payments would be made to the employee's contingent annuitant following the death of the employee after age 55. These payments were to be made regardless of whether or not the employee had retired by the time of his death. (Plaintiff's Ex. 19.)
5. The Contingent Annuity Option was explained in Section 7.02 of the Plan, and provided that:
a. An employee may ... elect to receive a reduced retirement income during his life and designate a Contingent Annuitant, if living, to receive, following the employee's death on or after the effective date of the Option, the same amount or such smaller amount as the employee may designate. Such Option may be elected while in the service of the Company at any time prior to normal (or early) retirement date, to become effective on a date specified by the employee, but may not become effective until the later of (1) the employee's 55th birthday, or, (2) two years after the date of election. If either the employee or the designated Contingent Annuitant is not living on the specified effective date, the Option shall not become effective. The reduced monthly retirement income the retired employee is to receive and the monthly amount the Contingent Annuitant is to receive shall be determined from the attached Schedule H, entitled, "Factors for Determination of Monthly Retirement Income Under Contingent Annuity Option."
6. A few months before his fifty-third birthday, Mr. Lee received a packet of information from the Company in regard to the Contingent Annuity Option. In addition to the letter explaining the Option, the Company sent Mr. Lee a statement of his Plan benefits, an explanatory booklet on the Option, an election form and sample completed election form, and a form for notification of interest in further information or of no interest in the Option. (Defendants' Ex. H.)
7. The letter, which was found among Mr. Lee's papers after his death, informed Mr. Lee of the Option's two-year waiting period before becoming effective and of other important Option provisions, and also stated that:
The decision to elect the Option or not is a matter of personal judgment to be based on your particular circumstances and objectives. The election and operation of the Option is a complex matter and you may want more information before you decide to elect it or not. If so, we will be glad to review it with you at your convenience.
8. The explanatory booklet sent with the letter thoroughly defined and explained the Option and provided specific examples of its operation and effect. The booklet clearly stated that the Option must be in effect for a Contingent Annuitant to receive monthly payments upon an employee's death prior to retirement:
6. WHAT IF I DIE BEFORE I RETIRE?

If the option is in effect and you die before you retire, a monthly payment, starting as of the first of the month after your death, would be made to your "Contingent Annuitant" if she (he) is still living. The monthly payment would continue for the life of your "Contingent Annuitant" and would amount to the percentage, as elected by you, of the pension that would have been paid to you if you had lived and retired on the first of the month following your death. (See Example III attached.)
(emphasis in original).
9. When the Company did not receive any response from Mr. Lee, another letter was sent to him on August 15, 1974, reminding him of the Option and requesting that he inform the Company whether he wished to elect the Option or had any future interest in it. A self-addressed envelope was enclosed with the letter, which again advised Mr. Lee of the Company's willingness to provide further information:
The decision to elect the Option or not is a matter of your personal judgment and should be based on your particular circumstances and objectives. The election and operation of the Option is a *319 complex matter and you may want more information before you decide to elect it or not.
If you want more information or have misplaced our earlier letter which was accompanied by an explanatory booklet and a statement of your benefits under the Retirement Plan, you are invited and encouraged to call us (stations 2670 or 2774) or write to us (mail code 533).
10. The Company never received either a notice of election or a notice of decision not to elect, nor did the Company ever receive any proof of age for a Contingent Annuitant for Mr. Lee, as required by the notice of election.
11. On October 29, 1975, the Company sent a memorandum summarizing Plan changes called for by ERISA. (Defendant's Ex. K.) The memorandum stated that:
4. The payment of retirement income provisions will be amended to provide that the normal form of annuity payment will be a qualified-spouse benefit with the 50% Contingent Annuity Option in effect at retirement, provided the employee is married prior to the initial date of commencement of benefit payments. All other provisions now contained in the Plan which define the terms and conditions of the Contingent Annuity Option will be continued. It will be amended, however, to provide that a participant may elect, upon proper notice to the Company, to receive his benefits under the life annuity option of the Plan without a spouse benefit.
(emphasis in original).
12. The Company's amended Plan, effective as of January 1, 1976, provided that the normal method of payment of retirement income for an employee with a qualified spouse would be in the form of a "50% Contingent Annuity Option." This method entailed monthly payments to the participant following retirement, with monthly payments to the Contingent Annuitant, if living, following the participant's death. (Plaintiff's Ex. 21.)
13. The Plan also provided for election of a "Contingent Annuity Option," which could be elected to become effective as early as an employee's fifty-fifth birthday two years after the election, under which a Contingent Annuitant could be designated to receive monthly payments following an employee's death after the effective date of the Option. The participant need not have retired for the Option to go into effect. (Plaintiff's Ex. 21.)
14. Section 8.02 of the Plan explained that:
[I]f the deceased retired employee retired under the normal form of payment of a 50% Contingent Annuity Option or had elected the Contingent Annuity Option in accordance with Section 8.03 and it was in effect, monthly payments will be made to the Contingent Annuitant starting the month following the death of the retired employee and will continue until the death of the Contingent Annuitant. Upon the death of an employee prior to retirement, and if the deceased employee had elected the Contingent Annuity Option and it was in effect, monthly payments will be made to the Contingent Annuitant starting the month following the death of the employee, and will continue until the death of the Contingent Annuitant.
(emphasis added).
15. On May 25, 1976, the Company issued a memorandum regarding the passage of ERISA. The letter stated that information on various plans was available to employees at a reasonable charge, and that all plan documents were available for examination at no charge. The letter concluded with:
If you have any questions about this Notice or your rights, contact the Employee Benefits Department. You may call (Station 2546) or visit Room W117 at the General Office Building. Also, the nearest Area Office of the Labor Department has people who will be able to assist you or provide you with additional information.
(Plaintiff's Ex. 27.)
16. A description of the Plan was issued to employees by the Company in November *320 of 1977. (Plaintiff's Ex. 22.) The summary identified the normal method of payment of retirement income as the "50% Contingent Annuity Option." The summary identified as an optional form of retirement income the "Contingent Annuity Option," which "enables you to provide 25% 50% 75% or 100% of your Retirement Income to be payable, after your death, to the person you name as your contingent annuitant. ..."
17. The summary stated that the Option could become effective as early as the employee's fifty-fifth birthday, but no specific examples were provided to illustrate the Option's effect upon payments after an employee's death prior to retirement. The summary did not explicitly state that if an employee died prior to retirement without having elected the "Contingent Annuity Option," no monthly payments would be made to a surviving spouse.
18. The Plan was amended again in 1979 and 1980 and then in May of 1981. In May of 1981, the "50% Contingent Annuity Option" became known as the "50% Survivor Benefit Option," and the "Contingent Annuity Option" became known as the "Survivor Benefit Option." Additionally, the Plan provided for a "Survivor Spouse's Benefit Option" whereby, upon election, an employee could provide for payment of fifty percent of his retirement income to his spouse if he died after his forty-fifth birthday with the Option in effect. (Plaintiff's Ex. 24.)
19. At all times between 1971 and Mr. Lee's death in 1983, the Plan required an affirmative election to provide for monthly payments of an employee's retirement income to his spouse following his pre-retirement death. Such an election entailed acceptance of a smaller retirement income for the employee if he lived to retirement.
20. No evidence was introduced to suggest that Mr. Lee ever indicated any interest in a Contingent Annuity/Survivor Benefit Option or ever asked for assistance in planning for his spouse's future. Mr. Lee's son, Guy J. Lee III, said that Lee had told him plaintiff would be provided for from his retirement fund. Mr. Lee's son, Gary, testified that he overheard Mr. Lee state that plaintiff would get a percentage of his retirement money; however, on cross-examination, he acknowledged that Mr. Lee said she would receive it when and if he retired.

Conclusions of Law
1. ERISA requires that summary plan descriptions be provided to each participant in an employee benefit plan, 29 U.S.C. § 1021(a), and that the description "be written in a manner calculated to be understood by the average plan participant and ... be sufficiently accurate and comprehensive to reasonably apprise such participants and beneficiaries of their rights and obligations under the plan." 29 U.S.C. § 1022(a)(1). See also 29 C.F.R. § 2520.102-2.
2. Plaintiff argues that the use of the terms "50% Contingent Annuity Option" and "Contingent Annuity Option" was confusing. Since employees were told that the normal method of payment of retirement income for employees with qualified spouses was by the former option unless they affirmatively elected otherwise, plaintiff argues, Mr. Lee naturally assumed that this option also insured coverage for his wife upon his death prior to retirement. However, all Company references to death before retirement stated that payments to a surviving spouse would be made if the Contingent Annuity Option had been elected and was in effect.
3. Even assuming that the Company's post-ERISA summaries and information were not sufficiently clear, the Court finds that Mr. Lee was apprised of the relevant Plan provisions by the pre-ERISA letter of explanation sent to him in June of 1974. The letter and accompanying explanatory materials informed Mr. Lee of the necessity of electing the Contingent Annuity Option if he was to provide for his wife after his death, either before or after retirement, and Mr. Lee indicated no interest in doing so. While the Plan later provided for a contingent annuity to be paid to an employee's *321 spouse upon the employee's post-retirement death, the requirement of affirmatively electing a contingent annuity to cover a spouse upon pre-retirement death never changed. The materials sent to Mr. Lee in June of 1974 provided numerous examples of various contingencies and how the Plan affected them. Moreover, when Mr. Lee failed to respond to this information, the Company sent an additional informative letter seeking his decision.
4. Finally, the Court finds it significant that Mr. Lee never made any effort to contact any knowledgeable person in the Company for further information or explanation, despite repeated invitations from the Company to do so. The Plan administrator satisfied the fiduciary obligation owed to Mr. Lee under ERISA; fiduciaries are not expected to provide individualized attention to participants. See Allen v. Atlantic Richfield Retirement Plan, 480 F.Supp. 848, 851 (E.D.Pa.1979), aff'd, 633 F.2d 209 (3d Cir.1980).
5. In Hopkins v. FMC Corp., 535 F.Supp. 235 (W.D.N.C.1982), plaintiff charged violation of fiduciary duty following the cancellation of her husband's elected 100% Joint and Survivor Annuity upon her husband's pre-retirement death. The deceased had been on long-term disability leave of absence for an extended period prior to his death; had he chosen instead to accept early retirement, the annuity would have been in effect at his death. However, the deceased would have received less money each month as a retiree than he did while employed but on leave.
As in this case, there was no evidence that the deceased had ever notified his company of any concern or confusion about his benefits, and he had received a comprehensive summary of the plan. The Hopkins court found the absence of employee-initiated inquiry into the relevant provision significant in light of the deceased's ability to inquire if he chose.
This Court finds the Hopkins analysis applicable to the facts of this case. Accordingly, defendants are entitled to judgment.