Violetta SCHAPIRO, Plaintiff-Appellant,†

v.

SECURITY SAVINGS & LOAN ASSOCIATION,
Lee Barczak, Nancy Barczak and Rona
Steingart, Defendants-Respondents.

Court of Appeals

*No. 88–0270. Submitted on briefs October 4, 1988.—Decided
February 7, 1989.*

(Also reported in 441 N.W.2d 241.)

---

† Petition to review denied.

For the plaintiff-appellant the cause was submitted on the briefs of *Sidney Gray,* of Milwaukee.

For the defendant-respondent Rona Steingart the cause was submitted on the briefs of *Robert N. Meyeroff,* of Milwaukee and *Charne, Glassner, Tehan, Clancy & Taitelman, S.C.* by *Howard A. Pollack* and *Brian L. Pierson,* of Milwaukee.

For the defendants-respondents Security Savings and Loan Association, Lee Barczak and Nancy Barczak the cause was submitted on the briefs of *Meissner & Tierney, S.C.* by *Cynthia M. Obremski* and *Susan J. Marguet,* of Milwaukee.

Before Moser, P.J., Sullivan and Gartzke, JJ.

MOSER, P.J.   Violetta Schapiro (Violetta) filed suit to establish an interest in real estate. Named as defendants were Lee and Nancy Barczak, the property owners, Security Savings and Loan Association (Security), holder of a first mortgage lien, and Rona Stein-

gart (Steingart), a prior owner. The trial court granted judgment against Violetta and quieted title in the Barczaks and Security.[1] The court also awarded them attorney's fees pursuant to sec. 814.025, Stats., the frivolous claims statute. Violetta appeals from the judgment. Because we conclude that the undisputed facts show that Violetta had abandoned her homestead rights in the property and because sec. 706.09, Stats., bars her claim, we affirm. We also grant the motion of the Barczaks and Security for attorney's fees on appeal.

Violetta's husband, S.A. Schapiro (S.A.), owned a parcel of residential property in Milwaukee county, and the couple resided on the property. In 1976, S.A. conveyed the property to his brother by quit claim deed. S.A. signed Violetta's name to the deed pursuant to a power of attorney she had executed in 1967.

S.A. now claims that the purpose of the conveyance was to reduce his marital estate before divorce. A few days after the deed was executed, Violetta moved from the residence and filed for a divorce. While the divorce was pending, S.A. also vacated the property. Neither S.A. nor Violetta have lived on the property since then.

In late 1976, S.A.'s brother conveyed the property to Steingart, their sister. Subsequently, in March 1977, S.A. executed a quit claim deed to Steingart. The deed failed to indicate marital status and contained a notation that the property was not homestead. The deed was not signed either by Violetta or on her behalf.

After S.A. moved out, Steingart leased the property and exercised full management and control over it. She did not account to S.A. for any revenues nor consult with him before incurring expenses. In 1983, she listed

---

[1]Steingart is not a respondent in this appeal because she was not named in the judgment. Moreover, a constructive trust claim against her is still pending.

179

the property with a realtor and ultimately sold the premises to the Barczaks, receiving cash and a note. Security, which made a purchase money loan, was granted a first mortgage lien on the property. The deed to the Barczaks was executed on November 30, 1983, and recorded on December 8, 1983.

Violetta first learned in March 1977, that S.A. had conveyed the property. She moved to implead Steingart and the brother in the pending divorce case in order to cancel S.A.'s deeds. Ultimately, Violetta and S.A. reconciled, the divorce and the claim for cancellation of the deeds were dismissed, and the record was sealed. Violetta now alleges that Steingart orally agreed to reconvey the property whenever demand was made, an agreement Steingart denies. No demand was made until after April 1986, when Violetta first learned of the sale to the Barczaks. Moreover, Violetta did not record any notice of her claim in the register of deeds office until May 1986.

Violetta also filed this lawsuit in May 1986. In addition to seeking ownership rights in the property, she sought possession of the premises, cancellation of the deeds and mortgage, and money damages. Violetta later filed a supplemental complaint against Steingart seeking a constructive trust on one-half of the income Steingart received from the sale. After the Barczaks and Security filed counterclaims against Violetta, S.A. was allowed to intervene.

All parties filed motions for summary judgment. The trial court concluded that Violetta had no homestead rights. Furthermore, the court held that even if S.A.'s deeds were void because Violetta had a homestead right, her claim was barred by sec. 706.09, Stats. Violetta's complaint as to the Barczaks and Security was dismissed with prejudice, and the affidavit she

filed with the register of deeds in 1986 was canceled. The trial court also found that Violetta's claims against the Barczaks and Security were frivolous pursuant to sec. 814.025(3)(b), Stats., and entered judgment against her for costs and attorney's fees in the amount of $59,712.84. The Barczaks and Security voluntarily dismissed their counterclaims against Violetta.

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Sec. 802.08(2), Stats. In reviewing a grant of summary judgment, this court applies the summary judgment methodology in the same manner as the trial court, and our review is *de novo*. *Green Spring Farms v. Kersten*, 136 Wis. 2d 304, 315, 401 N.W.2d 816, 820 (1987).

## HOMESTEAD RIGHTS

Violetta's claim is relatively simple: the property was her homestead; S.A. could not convey the homestead without her consent; therefore, the deeds from S.A. were void. If the deeds from S.A. were void, Steingart did not have title to convey to the Barczaks. To support her claim, Violetta alleges that although she moved from the property, she did not intend to abandon it as a homestead.

Section 706.02(1)(f), Stats., provides that the conveyance of "any interest of a married person in a homestead" is not valid unless it "[i]s signed, or joined in by separate conveyance, by or on behalf of each spouse." A conveyance that does not satisfy the statute is void and cannot be enforced against either spouse.

181

*State Bank v. Christophersen,* 93 Wis. 2d 148, 157, 286 N.W.2d 547, 552 (1980).

An early version of this statute was interpreted in *Godfrey v. Thornton,* 46 Wis. 677, 1 N.W. 362 (1879). The statute was held to create a personal disability in the husband that prevented him from conveying any interest in the homestead unless his wife waived the disability either by signing the conveyance or by executing a separate conveyance. *Godfrey,* 46 Wis. at 683–86, 1 N.W. at 363–66.[2] The statute did not give the wife any interest in the homestead property; it merely gave her limited personal control over her husband's ability to alienate his own estate. *Id.*

Homestead status can continue if the property is constructively "owned and occupied" during a temporary absence. *Jarvais v. Moe,* 38 Wis. 440, 445 (1875). For the status to continue, however, the wife's removal from the property must be for a fixed and temporary purpose. *Pedersen v. Nielsen,* 212 Wis. 608, 612, 250 N.W. 400, 401 (1933). Unless the removal is made with a certain and abiding intention to return to the premises and reside there, the homestead status is abandoned. *Id.* A vague intention to return someday is insufficient. *Id.*

Violetta admits that when she left the property in May 1976, she intended to file for divorce and to terminate the marital relationship. That intention is

---

[2]Before 1971, the statute restricted the right of a married man to convey his separately owned property if it was the family's homestead. *See* sec. 235.01(2), Stats. (1969). The current law, however, creates a disability in either spouse, and a wife may not convey her separately owned property if it is the homestead unless her husband consents. *See* sec. 706.02(1)(f), Stats.

inconsistent with any intent to reside on the property in the future. Consequently, her removal was not for a temporary purpose, and she abandoned the homestead. Likewise, S.A. moved from the property before he executed the 1977 deed.[3] Violetta's intent to return to the property was not formulated until after the couple reconciled in late 1977. Consequently, when S.A. executed the 1977 quit claim deed to Steingart, Violetta's consent was unnecessary because the property was not her homestead.[4]

## APPLICATION OF SEC. 706.09, STATS.

Violetta's claim against the Barczaks and Security is also barred by sec. 706.09, Stats. (1983).[5] That section provides as follows:

---

[3]S.A. does not claim the property as a homestead. He testified in depositions that it was his wife's desire to return to the property, not his.

[4]Violetta also challenges the sufficiency of the power of attorney pursuant to which S.A. signed her name to the 1976 deed. She claims that it was revoked by a later power of attorney, that it did not authorize S.A. to consent to a conveyance of the homestead on her behalf, and that it did not authorize him to give away the property. We need not address these issues. It is also unnecessary to review the continuing validity of the common law rule that a husband selects the family's homestead as well as Violetta's argument concerning adverse possession. "An appellate court is not a performing bear, required to dance to each and every tune played on an appeal." *State v. Waste Management of Wisconsin, Inc.,* 81 Wis. 2d 555, 564, 261 N.W.2d 147, 151, *cert. denied,* 439 U.S. 865 (1978).

[5]Subsequent to the execution of the deed to the Barczaks and the mortgage to Security, the legislature passed the Wisconsin Uniform Marital Property Act, *see* ch. 766, Stats., and amended subsection 706.09(1)(e), Stats., to reflect the new legal scheme. The amendment was effective January 1, 1986, and therefore is not

**(1)** A purchaser for a valuable consideration, without notice as defined in sub. (2), and his successors in interest, shall take and hold the estate or interest purported to be conveyed to such purchaser free of any claim adverse to or inconsistent with such estate or interest, if such adverse claim is dependent for its validity or priority upon:

. . . .

(e) Dower or homestead of the spouse of any transferor of an interest in real estate, where the recorded conveyance purporting to transfer the same states that the person executing it is single, unmarried or widowed; or fails to indicate the marital status of such transferor, and where such conveyance has, in either case, appeared of record for 5 years. This paragraph shall not apply to the interest of a married person who is described of record as holder in joint tenancy with such transferor.

(f) Any defect or insufficiency in authorization of any purported officer, partner, agent or fiduciary to act in the name or on behalf of any corporation, partnership, principal, trust, estate, minor, incompetent or other holder of an interest in real estate purported to be conveyed in a representative capacity, after the conveyance has appeared of record for 5 years.

. . . .

**(2)** A purchaser has notice of a prior outstanding claim or interest, within the meaning of this section wherever, at the time such purchaser's interest arises in law or equity:

(a) Such purchaser has affirmative notice apart from the record of the existence of such prior outstanding claim, including notice, actual or con-

---

pertinent to this case. Even if the amendment had been effective before the Barczaks acquired the property, the amendment refers to marital property rights and not the homestead status.

structive, arising from use or occupancy of the real estate by any person at the time such purchaser's interest therein arises, whether or not such use or occupancy is exclusive; but no constructive notice shall be deemed to arise from use or occupancy unless due and diligent inquiry of persons using or occupying such real estate would, under the circumstances, reasonably have disclosed such prior outstanding interest; nor unless such use or occupancy is actual, visible, open and notorious; or

(b)  There appears of record in the chain of title of the real estate affected, within 30 years and prior to the time at which the interest of such purchaser arises in law or equity, an instrument affording affirmative and express notice of such prior outstanding interest conforming to the requirements of definiteness of sub. (1)(b);

. . . .

(4)  The term "chain of title" as used in this section includes instruments, actions and proceedings discoverable by reasonable search of the public records and indices affecting real estate in the offices of the register of deeds and in probate and of clerks of courts of the counties in which the real estate is located; a tract index shall be deemed an index where the same is publicly maintained.

Adopted in 1967, sec. 706.09, Stats., is a title curative statute. It addresses the problem of constructive notice caused by gaps and ambiguities in the record, and deprives the specified items of their effect as constructive notice of adverse claims. Halligan, *Marketable title and state records: Clearing exceptions and closing deals*, 59 Wis. B. Bull. 23, 24 (May 1986). The statute restricts the operation of constructive notice unless the ambiguous reference or gap shows up in the chain of title within the five years immediately

185

preceding the transaction invoking the statute. *Id.* at 24, 50. The statute strengthens the status of persons relying on apparent record title, here the Barczaks and Security.

The Barczaks and Security are protected by the statute. The Barczaks gave valuable consideration for the property. *See* sec. 706.09(1), Stats. (1983). They paid Steingart $138,000 in cash and gave her a note for $47,000. Security also gave valuable consideration, having lent the Barczaks $138,000.

Section 706.09(1)(e), Stats. (1983), extinguishes adverse claims based on homestead rights if an otherwise valid conveyance has been recorded for five years and if the conveyance fails to indicate marital status. The 1977 quit claim deed to Steingart did not recite S.A.'s marital status. Additionally, the deed, recorded on April 14, 1977, had been of record for more than five years when the Barczaks purchased the property in late 1983.

Alternatively, sec. 706.09(1)(f), Stats., also operates to extinguish any alleged defect in the 1976 deed. That subsection applies when an agent transfers his principle's property without authorization. If the unauthorized instrument was recorded without being challenged for over five years, the conveyance is valid.

To be entitled to the benefits of the section, a purchaser must not have notice of the adverse claim: in this case, either the homestead claim or the defective power of attorney. Except for constructive notice arising from any person's use and occupancy of the land, notice from matters outside the record must be affirmative or actual. Sec. 706.09(2)(a), Stats. Moreover, the purchaser is charged with constructive notice of occupancy only if due and diligent inquiry of the occupants would have disclosed the interest. Here, Violetta has failed to

present any evidentiary facts to contradict an assumption that inquiry of tenants in possession of the property would have disclosed that Steingart claimed the property as her own.

A purchaser is also charged with constructive notice of any instrument appearing in the record chain of title in the thirty years before he or she acquires an interest. Sec. 706.09(2)(b), Stats. The instrument, however, must definitely identify the interest claimed. *Id.* In this case, an affidavit or similar instrument would have had to identify by positive statement, the nature and scope of the outstanding interest Violetta claimed. Secs. 706.09(1)(b) and (2)(b). Although the affidavit filed in 1985 did so, it was not filed prior to the Barczaks' and Security's acquisition of their interests. The items relied upon by Violetta—the timing of the 1976 deed vis-a-vis the divorce action, her effort to declare the conveyances fraudulent, the second power of attorney, and her signature on a prior mortgage—are all too indefinite to satisfy sec. 706.09(2)(b). The other facts she relied upon were not part of the chain of title. Subsequently, we conclude that Violetta's claim against the Barczaks and Security was barred by either sec. 706.09(1)(e) or (f).

## FRIVOLOUS CLAIM

Violetta also challenges the trial court's finding that her claim against the Barczaks and Security was frivolous. The court concluded that the claim lacked a reasonable basis in law or equity and was not supported by a good faith argument for a change in the law and that Violetta knew or should have known that to be the situation. *See* sec. 814.025(3)(b), Stats.

187

Whether a reasonable litigant should have concluded that a claim is without a reasonable basis in law or equity presents a mixed question of law and fact. *Stoll v. Adriansen*, 122 Wis. 2d 503, 513, 362 N.W.2d 182, 187 (Ct. App. 1984). What a reasonable litigant knew or should have known regarding the facts relevant to the claim is the factual component. *Id.* at 513, 362 N.W.2d at 187-88. Whether under the facts a reasonable litigant should have concluded the claim was frivolous requires an analysis of the legal significance of the facts and presents a question of law. *Id.* at 513, 362 N.W.2d at 188. The issue is not whether a party can or will prevail but whether the claim is so indefensible that it was frivolous and the party should have known it. *Id.* at 517, 362 N.W.2d at 189.

Violetta argues that the trial court's finding was erroneous because she pleaded a claim under various statutes, such as ch. 240 and secs. 841.01 and 893.33(2) and (3), Stats. As with most of the arguments in her brief, Violetta misses the point. Under the relevant and undisputed facts before the court on the motion for summary judgment, the claim to recover the property from the Barczaks was frivolous. Violetta moved from the homestead in May 1976, and made no attempt to return. She did not challenge Steingart's control over the premises after the divorce was dismissed. She failed to file any notice of her claim until months after Steingart sold the property. The Barczaks purchased the property without actual or constructive notice of her supposed homestead claim. Section 706.09, Stats., clearly protects the Barczaks and Security.

## FRIVOLOUS APPEAL

The Barczaks and Security also filed a motion for attorney's fees on appeal pursuant to sec. 809.25(3), Stats., claiming that Violetta's appeal was without any reasonable basis in law or equity and could not be supported by a good faith argument for an extension, modification, or reversal of existing case law. They pointed out that Violetta cited no applicable authority, relying instead on irrelevant facts, statutes and cases. Violetta's brief was an exercise in obfuscation and confusion. She failed to directly address the application of sec. 706.09, Stats., and only partially addressed the homestead issue. Most of her claim was based on irrelevant facts and innuendo. We conclude that the appeal was frivolous and remand the cause to the trial court to determine the amount of reasonable attorney's fees to be assessed against Violetta for this appeal.

*By the Court.*—Judgment affirmed and cause remanded for further proceeding consistent with this opinion.