John E. CARRELL and Jean M. Carrell, Plaintiffs,

v.

Clifford A. WOLKEN and Heritage Mutual Insurance, Defendants-Third Party Plaintiffs-Appellants,

AMERICAN STANDARD INSURANCE COMPANY OF WISCONSIN and Wisconsin Physicians Service Insurance Corporation, Defendants,

LIBERTY MUTUAL INSURANCE COMPANY, Defendant-Respondent,

v.

CONTINENTAL CASUALTY COMPANY, Third Party Defendant-Respondent.

Court of Appeals

*No. 92-1594. Submitted on briefs December 23, 1992.—Decided December 23, 1992.*

(Also reported in — N.W.2d —.)

On behalf of the defendants-third party plaintiffs-appellants, the cause was submitted on the briefs of *Arnold P. Anderson* of *Mohr, Anderson & McClurg, S.C.* of Hartford.

On behalf of the defendant-respondent, the cause was submitted on the brief of *Michael J. Cieslewicz* of *Kasdorf, Lewis & Swietlik, S.C.* of Milwaukee.

On behalf of the third party defendant-respondent, the cause was submitted on the brief of *Rocke A. Calvelli, Dorothy H. Dey* and *Jeralyn B. Wendelberger* of *Quale, Feldbruegge, Calvelli, Thom & Croke, S.C.* of Milwaukee.

Before Nettesheim, P.J., Brown and Snyder, JJ.

BROWN, J.   This dispute between insurance companies grows out of an automobile-motorcycle accident

when Clifford A. Wolken was operating a rental vehicle from Gordie Boucher Lincoln Mercury, Inc. Heritage Mutual Insurance, Wolken's automobile liability insurer, claims that Continental Casualty Company, Gordie Boucher's garage liability carrier, and Liberty Mutual Insurance Company, Gordie Boucher's excess carrier, both owe coverage to Wolken. We reverse the trial court's grant of summary judgment to Continental and Liberty for the reasons that follow.

## CONTINENTAL POLICY

Continental provided a garage liability policy and a general liability policy to Gordie Boucher. Heritage claims that Continental owes Wolken coverage because of an endorsement to the garage liability policy entitled "Garage Liability Extension Endorsement." That endorsement reads:

> If your business is shown in ITEM ONE of the declarations as an **auto** dealership, **your** customers are also **insureds** while using a covered **auto** you own, hire or borrow with your permission. [Emphasis in original.]

Heritage argues that the vehicle in the accident was owned by Gordie Boucher. Heritage asserts that this is established by the certificate of title for the vehicle which is in the name of Gordie Boucher. Since there is no dispute that the vehicle was being used by Wolken with Gordie Boucher's permission, Heritage contends that coverage applies.

Continental argues that Gordie Boucher was not the owner of the rental vehicle. Attached to its summary judgment motion is the affidavit of Bobbie Nick, the controller of Gordie Boucher, as custodian of the rental agreement between Wolken and Gordie Boucher. She

characterized the agreement as one "by which the vehicle . . . was rented to Clifford Wolken by and through the 'Lincoln-Mercury Dealer Daily Rental System.' " A later affidavit from Continental includes sections of Nick's deposition. There, she states that Gordie Boucher did not own the car, but rather that it was leased through the daily rental program by the Ford Motor Company.

Continental argues that its policy covers only the automobiles owned by Gordie Boucher. It asserts that Nick's affidavit and deposition material saying that Ford owned the car Wolken drove, are undisputed by Heritage. Therefore, Continental says that there is no genuine issue of fact regarding ownership of the vehicle—Ford owned the vehicle.

The trial court agreed with Continental that Ford owned the car and that this fact was undisputed. Based upon this, the trial court granted summary judgment to Continental. In reviewing summary judgments, we apply the methodology set forth in sec. 802.08(2), Stats., in the same manner as the trial court. *Schapiro v. Security Savs. & Loan Ass'n,* 149 Wis. 2d 176, 181, 441 N.W.2d 241, 244 (Ct. App. 1989). We owe the trial court no deference and conduct our review *de novo. Id.*

Our independent view of the record differs from the trial court's. The title says that Gordie Boucher is the registered owner of the car that Wolken rented. Nick says that Gordie Boucher really leased it from Ford. This creates an issue of fact as to who actually owned the vehicle. While Heritage did not, by way of counteraffidavit, dispute the testimony of Nick, we hold that for summary judgment purposes Heritage can stand upon the title, which specifically makes Gordie Boucher the owner. We note, for instance, that sec. 340.01(42), Stats.,

431

defines "owner" for purposes of financial responsibility as "a person who holds the *legal title* of a vehicle." (Emphasis added.) Granting summary judgment based upon the premise that Ford owned the car was inappropriate.

Rather than send this case back to the trial court for trial as to who the owner of the rental vehicle was, Heritage asks us to determine that Continental owes coverage as a matter of law. Heritage points out that in addition to there being coverage if Gordie Boucher owns the car, there is also coverage if Gordie Boucher either "hired" the car or "borrowed" it.

We cannot tell, however, whether this issue was raised in the trial court. We do not have the transcripts or briefs, so there is no real way of knowing for sure. We *could* read the record to support the idea that the issue was raised. In its motion for reconsideration before the trial court, Heritage contended that "[t]he policy insures any automobiles and *is not limited to automobiles owned, leased, or controlled by Gordie Boucher.*" (Emphasis added.) In its decision, the trial court states that "Heritage argues that Continental's policy . . . contains no requirement that the automobile had to be owned by him."

So, we can say that the issue *may* have been broached below. If it was, however, there is not much of a record supporting the claim. There is no factual material supporting the contention of "hiring" or "borrowing." There is no legal argument presented as to what these terms mean. We simply do not have enough of a record before us to decide the issue. Upon remand to the trial court, Heritage can renew this claim.

## LIBERTY'S EXCESS POLICY

Liberty issued two insurance policies to Gordie Boucher a general liability policy and an excess policy. The first one is not in dispute since Liberty agrees that the policy covered lessees of Gordie Boucher's automobiles up to $100,000. Liberty also agrees that Wolken was a lessee under the policy. In addition to this primary policy, Liberty issued a second policy to Gordie Boucher. Although not denominated as an "excess policy," the declarations make reference to the underlying policies. Coverage under this policy is disputed.

Liberty argues that the definition of an insured under the primary policy differs from the definition of an insured under the secondary policy, such that Wolken is not covered as to the secondary policy. Liberty cites the following language from the secondary policy:

> The definition of insured in any and all underlying policies shall not apply to this policy and, for purposes of this policy, the unqualified word "insured" shall mean:
>
> (1)   Ford Motor Company, any Franchise Dealer of Ford Motor Company, and any wholly owned or controlled subsidiary of such Franchise Dealer
>
> (2)   Ford Rent-A-Car System
>
> (3)   Lincoln-Mercury Dealer Daily Rental System

Liberty asserts that under these terms it is Ford, Gordie Boucher and the Rental Systems who are covered; it is not the person renting the automobile.

Heritage's response is that, although it does not quarrel with Liberty's reading of its policy, the policy is illegal since it violates Wisconsin's omnibus statute. Heritage cites the following from our omnibus statute, sec. 632.32(3)(a), Stats.:

433

> Coverage provided to the named insured applies in the same manner and under the same provisions to any person using any motor vehicle described in the policy when the use is for purposes and in the manner described in the policy.

Heritage contends that this law means there can be no limitation for permissive drivers which does not also apply to the named insured. Thus, since Wolken was a permissive driver, he is afforded the same coverage as the named insured, be it the dealer, the Rental System or Ford.

Liberty agrees with Heritage's understanding of this statute, but claims that it is entitled to an exception provided by another section of the same omnibus statute. This is sec. 632.32(5)(c), Stats., which states:

> If the policy is issued to a *motor vehicle handler*, it *may restrict coverage* afforded to anyone other than the motor vehicle handler or its officers, agents or employees to the limits under s. 344.01(2)(d) and to instances when there is no other valid and collectible insurance with at least those limits whether the other insurance is primary, excess or contingent. [Emphasis added.]

Liberty observes that Gordie Boucher is in the business of selling new and used cars and servicing motor vehicles. It handles the rental vehicles for those customers bringing their automobiles in for servicing. Liberty argues that Gordie Boucher is therefore a motor vehicle handler; and as a motor vehicle handler, it is entitled to the exception to the omnibus statute so long as it fulfills the conditions of that statute.[1] The conditions of the

---

[1] Heritage observes here that Continental argues that the auto driven by Wolken is owned by Ford, not by Gordie Boucher. Conversely, Liberty argues that the auto is owned by Gordie

statute require that the motor vehicle handler provide valid and collectible insurance for persons other than the handler up to the limits of sec. 344.01(2)(d), Stats. Since Gordie Boucher contracted with Liberty for a primary policy with limits of $100,000, Liberty concludes that the statute is satisfied.

Heritage responds that Liberty cannot use the motor vehicle handler exception because the necessary language is not in Liberty's excess policy. Heritage divides the statutory scheme of the omnibus statute into three parts. It argues that, first, there are provisions that an insurer must write into an insurance contract—sec. 632.32(3), Stats. Second, there are prohibited provisions that an insurer *may not* write into a policy—sec. 632.32(6). Third, there are the permissible provisions that an insurer *may or may not* put into a policy—sec. 632.32(5). Heritage contends that if an insurer intends to take advantage of a permissible provision, then the insurer must explicitly put it in the policy.

By this argument, we assume Heritage is contending that the statute is not self-operative any time a motor vehicle handler policy is written so that it restricts coverage to named insureds and facts outside the policy show other collectible insurance up to the minimum liability limits. Conversely, we assume that Liberty is arguing that the statute *is* self-operative.

Whether the statute requires that permissible restrictions be explicitly written into a policy involves statutory construction. Statutory construction is a ques-

Boucher, not Ford. Heritage contends that the reason why Liberty says Gordie Boucher owns the car, rather than the named insureds in the secondary policy, is that if the named insureds own the car, they are not the *handlers* of the motor vehicle and Liberty would not be able to avail itself of the statute.

tion of law which we resolve without deference to the trial court. *In re K.N.K.*, 139 Wis. 2d 190, 199, 407 N.W.2d 281, 286 (Ct. App. 1987). If a statute is unambiguous, we need not resort to legislative history to discern its meaning. *See In re J.W.T.*, 159 Wis. 2d 754, 761, 465 N.W.2d 520, 523 (Ct. App. 1990).

We agree with Heritage that the answer lies within the language of the statute itself. When provisions of the omnibus statute are *required* to be placed in a policy, the statute says that the provisions "shall" be included in the policy. *See, e.g.,* sec. 632.32(3), Stats. The title of the statute concerning required provisions states "Required provisions." Section 632.32(3). Clearly, the provisions of sec. 632.32(3) *must* be written into a policy.

In contrast, subsections of sec. 632.32(5), Stats., say that a policy "may" limit coverage in the situations outlined by that section. The title of this section is "Permissible provisions." Section 632.32(5). The statute says that a policy for a motor vehicle handler may restrict coverage to people other than the named insured, its officers, agents or employees to the limits under sec. 344.01(2)(d), Stats., and to instances where there is no other collectible insurance. Section 632.32(5)(c).

The policy in question has no such clause discussing a restriction in coverage for permissive users. Although the excess policy does make reference to the underlying policies, including the primary policy, it does not say anything about whether permissive users are restricted to the collectible insurance afforded under the primary policy. We hold that the language of the statute is such that if the insurer has a sec. 632.32(5)(c), Stats., situation and wants to take advantage of the statute, the insurer must put in language which says either that per-

missive users are restricted under the policy to the minimum statutory limits of liability or that the users may not avail themselves of the policy unless there is no other valid collectible insurance whether primary, excess or contingent. Because there is no such language here, Liberty may not use the statute to escape exposure.

Although we need not resort to the intent of the omnibus statute to resolve the issue, we note that one purpose of the omnibus coverage requirement is to afford the additional insured the same protection as is afforded to the named insured. *See Arps v. Seelow*, 163 Wis. 2d 645, 649, 472 N.W.2d 542, 543 (Ct. App. 1991). We read into this intent a presumption that additional insureds may avail themselves of a policy unless (1) the statute allows a restriction, and (2) the policy takes advantage of this authorization by spelling out how the additional insured is to be restricted.

The trial court held that the Liberty policy satisfied the statute. We reverse because the policy never mentions additional insureds and how they are restricted. Therefore, the policy does not satisfy the statute.[2]

Heritage asks us to prorate the Liberty and Heritage policies. Liberty argues that since its policy is an excess policy, proration with the Heritage primary policy is improper. We refuse to decide the issue since that is outside the scope of this appeal. The trial court did not pass on this and we are confined to review of trial court determinations. The proration arguments must come before the trial court on remand.

---

[2] In the alternative, Heritage argues that Gordie Boucher was not a motor vehicle handler. We need not decide this.

We reverse the grant of summary judgment for Continental and remand to the trial court with directions that it try the factual issue of who owned the automobile driven by Wolken when he was involved in the accident.[3] We further reverse the grant of summary judgment for Liberty and direct that summary judgment be entered for Heritage to the limited effect that Liberty's secondary policy affords coverage to permissive users.

*By the Court.*—Judgment reversed and cause remanded with directions.

---

[3] Heritage raised various arguments in its brief-in-chief which we do not address in this opinion. The arguments mainly concerned whether Continental's policy was primary to the Heritage policy. We did not reach these because the issue of who the owner of the car was should be answered first. We do not preclude Heritage from raising these arguments in the future should it find that necessary. Likewise, we do not preclude Continental from arguing these issues.