Marcia ROEBKE, Special Administrator of the Estate of Lillian A. Streckert, Deceased, Plaintiff-Appellant,†

v.

NEWELL COMPANY, Defendant-Respondent.

Court of Appeals

*No. 92–2516. Submitted on briefs February 26, 1993.—Decided June 9, 1993.*

(Also reported in 503 N.W.2d 295.)

†Petition to review denied.

627

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *Lutz, Burnett, McDermott & Jahn* of Chilton.

On behalf of the defendant-respondent, the cause was submitted on the brief of *Lisa Stephens Neubauer* and *Laura A. Brenner* of *Foley & Lardner* of Milwaukee.

Before Nettesheim, P.J., Anderson and Snyder, JJ.

SNYDER, J.  Marcia Roebke appeals from a judgment and an order denying her claim for pension benefits as a beneficiary under her deceased mother's employee benefit plan with Newell Company. Roebke contends that she is entitled to survivorship pension benefits, despite her mother's election to the contrary, because Newell breached its fiduciary duty under the Employment Retirement Income Securities Act (ERISA)[1] by failing to instruct and assist her mother in choosing the most advantageous pension payout method. Roebke also argues that Newell failed to act in compliance with the terms of its own plan. Because we conclude that Newell has no duty under ERISA to assist plan participants with benefit decisions absent an affirmative request by the participant to a knowledgeable company employee and that Newell did not administer its plan improperly, we affirm.

## I. FACTS

Lillian A. Streckert was employed at Foley Company from 1964 to June 1, 1989. As an employee of Foley, Streckert was a participant in the 1984 Newell Pension Plan (the plan) which was adopted for employees of Foley in 1985.[2] The plan is described in a

---

[1] *See* 29 U.S.C. §§ 1001–1461.

[2] Foley is owned by Newell Company. The Newell Pension Plan for Hourly and Distribution Paid Employees was amended effective January 1, 1984. Effective September 4, 1985, the

Summary Plan Description (SPD), a booklet which, according to Newell, was distributed to all Foley employees in 1985. In August 1988, Streckert requested pension information under the plan for an anticipated retirement date of March 31, 1989. In September 1988, Newell provided Streckert with an estimated pension calculation based on various payout options available to her under the plan.

Streckert was entitled to choose between a "Straight Life Annuity" or a "10-Year Certain" payout method. According to the "Straight Life Annuity" method, benefits are payable in monthly installments for as long as the participant lives, but the benefits cease upon death.[3] By contrast, under the "10-Year Certain" method, benefits may continue to a named beneficiary after the participant's death. If the participant dies within the ten-year period, the monthly benefits are paid to the named beneficiary for the remainder of the ten-year term.[4]

---

Foley Company Retirement Plan for Factory Hourly Employees was merged with the amended Newell plan.

[3] The Summary Plan Description (SPD) describes the "Straight Life Annuity" method as follows:

> This method pays you a monthly benefit during your lifetime with payments stopping at your death. . . . It will pay you the largest monthly amount because no income is continued to someone else after your death. . . .

[4] The SPD describes the "10-Year Certain" method as follows:

> Under this method, benefits are paid monthly for your lifetime, with payments guaranteed for ten years, even if you should die within that time. For example, if you die after receiving payments for only eight years, your beneficiary would continue to collect the same benefit for two years — the remainder of the guaranteed period. If you live longer than ten years, payments continue until your death only. Monthly benefits under this method are smaller

In November 1988, Streckert was diagnosed as terminally ill from colon cancer. Following surgery in December 1988, Streckert began a leave of absence from Foley due to her condition. Shortly after the surgery, Streckert's condition worsened, she became weak and experienced loss of memory.

Under the plan, each participant must receive written notice of the right to elect the various retirement options available to him or her. Newell sent Streckert an application form which identified and described the two payout methods available to her. In March of 1989, Streckert submitted her application form for retirement benefits to Newell. Despite her terminal illness, Streckert selected the "Straight Life Annuity" method, which was labeled "Participant-Life Only" on the application. Streckert received her monthly benefit payments from the date of her retirement on June 1, 1989, through her death on February 14, 1990, at which time the payments ceased.

Streckert's will named her daughter, Marcia Roebke, as her personal representative. On February 4, 1991, in her capacity as special administratrix of Streckert's estate, Roebke filed an action against Newell alleging that Newell had breached its fiduciary duty to Streckert under ERISA by failing to advise her to choose the "10-Year Certain" payout method and failing to act in accordance with the terms of the plan.

In a decision dated April 9, 1992, the trial court granted summary judgment in favor of Newell on the basis that Newell had no statutory or contractual obligation under ERISA to provide individualized instruction to Streckert regarding her pension choices. Before an order was entered, Roebke moved for recon-

than under the straight life annuity method because they are guaranteed for ten years.

sideration of the judgment based upon new evidence. On August 31, the trial court entered an order denying Roebke's motion to reconsider and a judgment in favor of Newell dismissing the case. Roebke appeals from the order and the judgment.[5]

In reviewing summary judgments, we apply the methodology set forth in sec. 802.08(2), Stats., in the same manner as the trial court, and our review is *de novo. Schapiro v. Security Sav. & Loan Ass'n*, 149 Wis. 2d 176, 181, 441 N.W.2d 241, 244 (Ct. App. 1989). The summary judgment methodology has been repeated often, and we need not recite it here. *See In re Cherokee Park Plat*, 113 Wis. 2d 112, 115–16, 334 N.W.2d 580, 582–83 (Ct. App. 1983). Summary judgment should be granted where there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. *Schapiro*, 149 Wis. 2d at 181, 441 N.W.2d at 244.

## II.  FIDUCIARY DUTY

The first issue before this court is the extent of Newell's fiduciary duty to Streckert under ERISA. It is undisputed that Newell is a fiduciary with respect to its plan participants. 29 U.S.C. § 1104(a)(1)(B) sets forth one of the duties of plan fiduciaries:

> **(1)**  . . . [A] fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and —
>
> . . . .

---

[5] On July 31, 1992, Judge Hugh F. Nelson retired and was succeeded by Judge Donald A. Poppy, who entered summary judgment in favor of Newell and an order denying Roebke's motion for reconsideration.

> **(B)** with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims.

Roebke argues that Newell breached its fiduciary duty by failing to adequately inform and instruct Streckert regarding her pension options. Specifically, Roebke argues that Newell knew or should have known that Streckert was terminally ill and confused, and therefore it owed an affirmative duty to advise her to select the "10-Year Certain" method, which was likely the most advantageous option financially given her terminal illness. We disagree.

Several federal courts have interpreted the scope of a plan administrator's fiduciary duty under 29 U.S.C. § 1104 and concluded that even when an administrator is aware that the employee is dying or seriously ill, no duty exists to explain pension options on an individual basis. For example, in *Allen v. Atlantic Richfield Retirement Plan*, 480 F. Supp. 848 (E.D. Pa. 1979), *aff'd*, 633 F.2d 209 (3d Cir. 1980), Allen, an employee of Atlantic Richfield, had suffered from severe coronary problems for several years. In April 1975, arrangements were made for Allen to undergo a bypass operation. In June, a representative from Atlantic Richfield met with Allen and notified him that given his condition he might already be eligible for disability retirement, whereby his wife would receive a substantial lump sum benefit payment in the event of his death. However, the representative informed Allen that the election of disability retirement was not effective until thirty days after application. Allen executed the necessary forms but died six days later after undergoing the bypass operation. *Id.* at 849.

Allen's widow brought suit under ERISA contending Atlantic Richfield should have notified Allen earlier of the advantages of electing the disability retirement option and of the risks posed by the thirty-day waiting period. In rejecting her claim, the court concluded that Congress did not intend to impose a duty to provide the kind of individualized attention urged by Allen's widow, but rather envisioned that a fiduciary could discharge its obligations through the use of an explanatory booklet, provided that the booklet adequately explained the plan. *Id.* at 851.

Similarly, in *Cummings by Techmeier v. Briggs & Stratton*, 797 F.2d 383 (7th Cir.), *cert. denied*, 479 U.S. 1008 (1986), the employer sent a packet of information to Cummings, a terminally ill employee, explaining pre-retirement options for which he was eligible. The options included one which would allow him to choose reduced pension during his lifetime in return for a guaranteed payment to a named beneficiary after his death. Cummings failed to respond, and after a period of hospitalization he gradually became mentally confused and disoriented. After receiving no response, the employer sent another packet with the same pension information, but Cummings never completed or returned the application for survivorship benefits. *Id.* at 385–86.

Cummings' former spouse and administratrix of his estate filed suit alleging various ERISA violations. The court determined that the employer satisfied its fiduciary duty by providing an accurate plan summary. In doing so, the court cited a similar case, *Lee v. Union Electric Co.*, 606 F. Supp. 316, 321 (E.D. Mo. 1985), *aff'd*, 789 F.2d 1303 (8th Cir.), *cert. denied*, 479 U.S. 962 (1986), in which the court held that where an employee does not contact a knowledgeable company

employee for further information there is no obligation under ERISA for a fiduciary to provide individualized attention to the employee. *Cummings*, 797 F.2d at 387. "An opposite interpretation would impose an almost impossible burden on ERISA plan administrators to seek out and maintain sufficient current information about the health and individual needs of each plan member to enable the administrators to render personal service." *Id.*

Roebke cites no authority for her contention that the duty of a fiduciary under 29 U.S.C. § 1104 extends so far as to require individualized attention to the needs of plan members, absent contact with a knowledgeable company employee. We find the federal cases to be persuasive and therefore conclude that absent an affirmative request by Streckert seeking help from a knowledgeable employee, Newell had no obligation under ERISA to provide individual counseling to Streckert.[6]

Roebke contends that there is evidence which indicates that Streckert did contact someone at Foley regarding the Newell pension plan but was unable to obtain any assistance. This evidence consists of several conversations that Roebke and her husband had with Streckert before her death. According to the Roebkes, Streckert told them on more than one occasion that Marcia Roebke was going to be the beneficiary of Streckert's pension benefits and that she had called Newell for advice, but that the person she talked to was unfamiliar with the plan and could not help her.

---

[6] *See also Hopkins v. FMC Corp.*, 535 F. Supp. 235 (W.D.N.C. 1982); *Shlomchik v. Retirement Plan of Amalgamated Ins. Fund*, 502 F. Supp. 240 (E.D. Pa. 1980), *aff'd*, 671 F.2d 496 (3d Cir. 1981).

■

First, as Roebke conceded to the trial court, statements allegedly made by Streckert to Roebke would not be admissible at trial because Roebke, as a person interested in the outcome of the case, would be precluded by the "dead man's statute" from testifying.[7] Roebke is therefore incompetent to testify as to conversations she had with her mother in which Streckert allegedly revealed her intentions with respect to her pension benefits.

However, Roebke argues that the dead man's statute does not prevent her husband, Thomas, from testifying as to the conversations he had with Streckert because a spouse's interest is too remote.[8] Thomas alleges that Streckert told him that she wanted Roebke to be the beneficiary under the "10-Year Certain" option and that she had talked to someone at Newell about the plan for advice. Newell argues that such statements also constitute inadmissible hearsay.

■

According to sec. 908.01(3), Stats., hearsay is a statement, other than one made by the declarant, offered into evidence to prove the truth of the matter asserted. Roebke seeks to use Streckert's statement to her husband that Streckert called Newell for help and her statement that she intended for Roebke to be the beneficiary of her pension benefits to establish that she in fact did so. By definition, such statements are hearsay since Roebke seeks to use them for the truth of the matter asserted.

[7] See sec. 885.16, Stats.

[8] See In re Estate of Christen, 72 Wis. 2d 8, 239 N.W.2d 528 (1976).

Statements constituting hearsay are admissible only if they fall within a statutory exception to the hearsay rule. The trial court concluded that these statements do not "fit the state-of-mind or statement-of-recent-perception exceptions to the hearsay rule." We agree with the trial court's analysis, and further conclude that the statements do not fall within any other statutory exception to the hearsay rule.[9]

Since both Mr. and Mrs. Roebke's testimony regarding statements made by Streckert constitute inadmissible hearsay, there exists no material issue of fact regarding whether Streckert contacted a knowledgeable employee at Newell to ask for assistance in her pension decision or regarding the pension payout option she selected.[10] In hindsight, Streckert's choice

---

[9] Roebke asserts for the first time on appeal in her reply brief that Streckert's statements to her husband are admissible as a statement of her intent under sec. 908.03(3), Stats. We will not, as a general rule, consider issues raised by appellants for the first time in a reply brief. *State v. Lewandowski*, 122 Wis. 2d 759, 763, 364 N.W.2d 550, 552 (Ct. App. 1985). Therefore, we will not specifically address this argument, but simply note that we have considered all of the statutory hearsay exceptions, including sec. 908.03(3), and conclude that none is applicable.

[10] In her motion for reconsideration and in briefs to this court, Roebke relies heavily on an affidavit by Barbara Liebau, the office manager for Streckert's doctor. Liebau asserts in her affidavit that she knew Streckert personally and was aware of her deteriorating condition. Liebau alleges that she advised Leonard Koch, Newell's employee relations manager, that Streckert needed the assistance of her employer to handle decisions relating to any matter involved with her retirement. At the outset, we question why this "new evidence" from the *plaintiff's own witness* was introduced for consideration after the

was not advantageous to Roebke. However, absent proof of a request for assistance, Newell owed no duty under ERISA to give individualized advice to Streckert regarding her choice.

## III. BREACH OF CONTRACT

ERISA also requires that the description of the plan in the SPD provided to each participant be written in a manner calculated to be understood by the average plan participant, and be sufficiently accurate and comprehensive to reasonably apprise such participants and beneficiaries of their rights and obligations under the plan.[11] Plan administrators are required under ERISA to act consistently with the written terms of the plan. *Cummings*, 797 F.2d at 387.

As an alternative theory for relief, Roebke argues that Newell breached its contract because it did not act in compliance with the terms of the plan or the SPD in the following respects: (1) the application form provided to Streckert was not complete and understandable so that she could make an informed decision, (2) the information and assistance provided to Streckert were inadequate, and (3) Newell failed to obtain the necessary information from Streckert before approving her selection.

First, Roebke asserts that Newell violated the express language of the plan, which requires Newell to provide each participant written notice, in nontechni-

---

motion for summary judgment was fully briefed and argued. However, even considering the allegations in Liebau's affidavit, we agree with the trial court that the affidavit does not disclose facts sufficient to show that Newell was aware of problems associated with Streckert's selection of pension benefits.

[11] *See* 29 U.S.C. §§ 1021(a) & 1022(a)(1).

cal terms, of his or her right to elect the normal or optional form of payment of pension benefits. Roebke argues that Newell provided a confusing application form based on the following: (1) it is not labeled as an application, (2) it uses the word "participant" instead of employee, (3) it appears to offer the applicant only the choices under the "Normal Forms" heading which only includes the "Single Life Annuity" option, and (4) there is no area in which to designate a beneficiary. We have reviewed the application form and conclude, as did the trial court, that it provides a complete, nontechnical description of the available options which is understandable by the average plan participant.[12] This is especially true in the present case given the fact that Streckert previously requested and received an estimated pension calculation for both options.

Second, Roebke argues that Newell failed to provide adequate information and assistance to Streckert as required by the language of the plan and SPD. She argues that the SPD and the plan, which incorporate the same fiduciary standard set forth under ERISA, obligated Newell to provide affirmative assistance in the form of personal contact and aid in selecting retirement benefits. Assuming that the language in the SPD

[12] The application in question sets forth two options each under the category "Normal Forms" and "Optional Forms." Since Streckert was single, her only options were "Participant-Life Only" under the "Normal Forms" heading and "Life With Ten Year Certain" under the "Optional Forms" heading. We find the accompanying explanations of each option to be clear, understandable, and completely consistent with the explanations of the options provided in the SPD.

is controlling and it gives rise to a contract claim,[13] we conclude that the SPD provides the employee with a clear and understandable summary of the overall plan and benefits. Further, we have already concluded that the fiduciary standard set forth under ERISA does not require the individualized counseling that Roebke seeks. The fiduciary terms outlined in the plan and the SPD are exactly those required under ERISA. The fact that the language appears in the plan does not change our previous analysis or give rise to an additional obligation. Newell's fiduciary obligations under the plan are no different than required under ERISA.

Third, Roebke asserts that Streckert's pension rights were controlled by the 1984 plan, which required Newell to obtain evidence of an employee's good health before accepting any retirement application.[14] Roebke argues that had Newell done so, it would have been alerted to Streckert's ill health and would have been able to give her additional assistance in completing the required documents. Even if we assume that Newell is bound by the 1984 plan as alleged by Roebke, based on

[13] We are not convinced that the SPD language controls over the plan or gives rise to a contractual obligation. In *Voigt v. South Side Laundry & Cleaners*, 24 Wis. 2d 114, 118, 128 N.W.2d 411, 413 (1964), the court held that provisions in a master contract with respect to an employee pension plan supersedes statements in explanatory booklets given to employees. However, other courts have concluded that statements in a summary plan are binding and govern over any conflicting language in the plan. *Edwards v. State Farm Mut. Auto. Ins. Co.*, 851 F.2d 134, 136 (6th Cir. 1988). Since the issue is not dispositive, we decline to decide it.

[14] The parties dispute whether Newell's 1984 plan or its amended 1989 plan controls the issue in this case. The 1989 plan purportedly eliminates the good health requirement.

the parties' affidavits and briefs it is undisputed that proof of good health is required only when a single participant elects to receive the "10-Year Certain" method. Since Streckert elected to receive her benefit under the "Single Life Annuity" method, Newell was not required to obtain evidence of good health.

Accordingly, we conclude that Newell did not violate any fiduciary responsibility mandated by ERISA. Newell provided a clear and understandable SPD as required under ERISA and acted consistently with its duties and obligations under the plan.[15] Since we conclude that there are no material issues of fact in dispute which would warrant a trial and Newell is entitled to judgment as a matter of law, we affirm.

---

[15] Roebke argues that a factual dispute exists regarding whether Streckert actually received the SPD as required under 29 U.S.C. § 1021(a)(1), and therefore summary judgment is inappropriate. Specifically, Roebke alleges that Streckert was the type of person who always saved important documents, and since Roebke did not find the SPD when going through Streckert's personal effects, there is a likelihood that she never received it. Newell argues that all Foley employees were mailed a copy of the SPD in 1985, and that Roebke should be precluded from raising such an argument now since she testified in an earlier deposition that she in fact did find the SPD.

The trial court was satisfied with Newell's proof that each employee had been provided with a copy of the SPD and that Roebke's allegations did not provide direct proof to the contrary. Even ignoring the problematic issue of Roebke's prior inconsistent sworn testimony, we agree with the trial court and conclude that Roebke's allegations are based on pure speculation, and no genuine issue of fact as to whether Streckert received a copy of the SPD exists for summary judgment purposes.

*By the Court.*—Judgment and order affirmed.