Bessielove LEE, Appellant,

v.

UNION ELECTRIC COMPANY, a Corporation, and Union Electric Retirement Plan, Appellees.

No. 85–1502.

United States Court of Appeals, Eighth Circuit.

Submitted Nov. 15, 1985.

Decided May 2, 1986.

As Amended on Denial of Rehearing July 2, 1986.

Kenneth J. Heinz, St. Louis, Mo., for appellant.

Francis X. Duda, St. Louis, Mo., for appellees.

Before LAY, Chief Judge, HENLEY, Senior Circuit Judge, and JOHN R. GIBSON, Circuit Judge.

JOHN R. GIBSON, Circuit Judge.

Bessielove Lee, the widow of former Union Electric Company (the Company) employee Guy Lee, Jr. appeals from a district court[1] judgment denying her claim under

1. The Honorable William L. Hungate, United States District Judge for the Eastern District of Missouri.

the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §§ 1001–1381 (1982 & Supp. III 1984), for survivor annuity benefits from the Union Electric Retirement Plan (the Plan). Mrs. Lee claimed a right to survivor annuity benefits under the Plan or, in the alternative, damages equal to such benefits to compensate for the Company's failure to adequately inform Mr. Lee in the summary plan description of the need for such an election. The district court held that the terms of the Plan in effect at Mr. Lee's death in 1983 required him to affirmatively elect survivor benefits in order to provide annuity payments to his wife in the event of his death before retirement. Since Mr. Lee died before retirement without making this election, the court held, Mrs. Lee had no right to annuity payments.[2] The court also held that the company provided Mr. Lee adequate information on the need for an election in the summary plan description and pre-ERISA information packet and therefore was not liable for damages. *Lee v. Union Electric*, 606 F.Supp. 316, 317 (E.D. Mo.1985). On appeal, Mrs. Lee essentially reasserts her claims made before the district court. We affirm the court's judgment.

In this appeal we conclude (1) that the Plan in effect at Mr. Lee's death by its terms required him to affirmatively elect the Survivor Benefit Option, set forth in section 8.03 of the Plan, in order that his widow would receive survivor's annuity benefits on his death before retirement; and (2) that the summary plan description adequately explained the need for an election and therefore was not deficient under ERISA.

The 1974 Union Electric Retirement Plan provided that the regular method of retirement benefit payment, applicable automatically unless the employee otherwise elected, was a life annuity commencing on the employee's retirement date.[3] In the alternative, the employee could elect the Contingent Annuity Option under which the employee agreed to receive a reduced retirement income during his or her life, and designated an annuitant to receive, upon the employee's death, a life annuity amounting to 100, 75, 50 or 25 percent of the employee's pension benefits. The Contingent Annuity Option could not become effective before the latter of the employee's fifty-fifth birthday or two years after the date of the election. Union Electric Retirement Plan, § 7.02 (effective Apr. 1, 1974). J.A. at 67.

On June 28, 1974, shortly before his fifty-third birthday, Mr. Lee received an information packet from the Company notifying him of his eligibility to elect the Contingent Annuity Option. The information packet contained a statement of Mr. Lee's Plan benefits; an explanatory booklet on the Contingent Annuity Option, which included examples of how the Option operated; a Notice of Election Form; a sample completed Notice of Election Form; and a form on which the employee could request further information or notify Union Electric of his or her interest in the Contingent Annuity Option.

A letter accompanying the packet explained that the Contingent Annuity Option permits employees to provide for a portion of their retirement income to be paid, after the employee's death, to the employee's chosen annuitant. Under this option, the employee would receive a smaller pension when he or she retired. The letter explained:

    (b) *You may elect the Option to be in effect as early as your 55th birthday and before you retire.* If the Option is in effect and you die before you retire, and if your Contingent Annuitant survives you, she (he) would be paid a monthly pension for the re-

---

**2.** Mrs. Lee was entitled to, and did receive, a lump sum payment of Mr. Lee's premium contributions to the Plan.

**3.** The Plan allowed early retirees to elect to have payments commence on the first day of any

month after early retirement prior to the regular retirement date. Union Electric Retirement Plan, § 8.02 (effective May 1, 1981). Joint Appendix (J.A.) at 213.

mainder of her (his) life. Such monthly pension would be a percentage, as specified in your elected Option, of the pension that would have been paid to you if you had lived and retired on the first of the month following your death; * * *.

Letter from E.W. Nolle to Guy Lee, Jr. (June 28, 1974) (discussing Contingent Annuity Option). J.A. at 111. The letter also provided:

The decision to elect the Option or not is a matter of personal judgment to be based on your particular circumstances and objectives. The election and operation of the Option is a complex matter and you may want more information before you decide to elect it or not. If so, we will be glad to review it with you at your convenience.

*Id.*

The explanatory booklet further described the Contingent Annuity Option. The booklet stated that the Option had to be in effect in order for a contingent annuitant to receive monthly payments upon the employee's death prior to retirement. Under the heading *"What If I Die Before I Retire"* the booklet stated:

*If the Option is in effect* and you die before you retire, a monthly payment, starting as of the first of the month after your death, would be made to your "Contingent Annuitant" if she (he) is still living. The monthly payment would continue for the life of your "Contingent Annuitant" and would amount to the percentage, as elected by you, of the pension that would have been paid to you if you had lived and retired on the first of the month following your death. (See Example III attached.)

Union Electric Retirement Plan Explanatory Booklet, Contingent Annuity Option (Emphasis in original). J.A. at 119. The examples provided in the booklet included illustrations in which the employee died before retirement. *Id.* J.A. at 125.

The district court found that Mr. Lee did not respond to this mailing. The Company sent a follow up letter with the same infor-

mation. Again that letter stressed the importance of the election and invited Mr. Lee to seek further information from the Company. The letter contained a self-addressed envelope and urged Mr. Lee to use it to indicate his election or his interest in the Option. Again, the district court found, Mr. Lee did not respond.

The Company notified its employees by mail in October 1975 of proposed changes in the Plan to bring it into conformity with ERISA. A copy of this letter was found among Mr. Lee's personal effects after his death. The letter summarized the proposed changes in the Plan. The following segment is relevant:

The payment of retirement income provisions will be amended to provide that the *normal* form of annuity payment will be a qualified spouse benefit with the 50% Contingent Annuity Option in effect at retirement, provided the employee is married prior to the initial date of commencement of benefit payments. All other provisions now contained in the Plan which define the terms and conditions of the Contingent Annuity Option will be continued. It will be amended, however, to provide that a participant may elect, upon proper notice to the Company, to receive his benefits under the life annuity option of the Plan without a spouse benefit.

Letter from P.J. Potts to Executive, Supervisory, Administrative, Professional, Confidential, and other Non-Union Employees (Oct. 29, 1975) (emphasis in original). J.A. at 137, 139.

The changes became effective January 1, 1976 and the Company distributed an amended Plan booklet. Article VIII of the amended Plan stated the retirement income options. Section 8.01 stated that the normal method of retirement income payment to a retired employee with a qualified spouse would be a 50% Contingent Annuity Option with the employee's spouse named as the contingent annuitant. The normal method of payment for an employee without a qualified spouse remained a life annu-

ity. Employees could elect not to be paid under the normal payment plan.

Section 8.02 of the Plan established the regular payment terms. It specifically distinguished between payment terms on death after retirement, and on death before retirement:

> *Regular Payments.* The first payment of an employee's retirement income will be made on his retirement date * * *. Subsequent payments will be made monthly thereafter, ceasing with the last payment preceding death of the employee; provided, however, if the deceased *retired* employee retired under the normal form of payment of a 50% Contingent Annuity Option or had elected the Contingent Annuity Option in accordance with Section 8.03 and it was in effect, monthly payments will be made to the Contingent Annuitant starting the month following the death of the retired employee and will continue until the death of the Contingent Annuitant. Upon the death of an employee *prior to retirement, and if* the deceased employee had elected the Contingent Annuity Option and it was in effect, monthly payments will be made to the Contingent Annuitant starting the month following the death of the employee, and will continue until the death of the Contingent Annuitant.

Union Electric Retirement Plan § 8.02, at 17 (effective Jan. 1, 1976) (emphasis added). J.A. at 142. The change to a survivor annuity plan as the normal method of retirement benefit payment brought the Plan into conformity with 29 U.S.C. § 1055(a) (1982). The last sentence of section 8.02, dealing with payments on death before retirement, makes clear the need for an affirmative election to provide annuity benefits to the spouse of an employee who dies before retirement.

Section 8.03 of the Plan explained the Contingent Annuity Option, which the employees could elect to become effective as early as the employee's fifty-fifth birthday or two years after the election is made. The essential characteristics of this Option, as stated in the preceding announcement letter, remained unchanged by the 1976 amendment: the employee was required to affirmatively elect the Option; the employee could elect to provide 25, 50, 75 or 100 percent of his pension to the annuitant; and an effective election would cause the employee to receive lower pension benefit payments after retiring.

The Plan again was amended in 1979 and 1980, in ways not relevant to the issues which we address here. Finally, in a May 1981 amendment the names of the retirement payment methods were changed. The 50% Contingent Annuity Option was renamed the 50% Survivor Benefit Option. The Contingent Annuity Option was renamed the Survivor Benefit Option.

To satisfy ERISA requirements, 29 U.S.C. § 1021, the Company distributed a summary plan description to covered employees which summarized, among other things, the payment terms of the Plan effective at Mr. Lee's death. Under the heading *"Optional Forms of Retirement Income"*, the summary listed a 50% Survivor Spouse's Benefit Option for employees aged forty-five to fifty-five years, and a Survivor Benefit Option for employees aged fifty-five to sixty-five years. The summary explained that both options must be elected, and that the employee's own retirement income would be reduced commensurate with the annuity level elected. The summary plan booklet provided examples of the various payment forms in operation. In none of the examples, however, nor in the Plan terms, is it stated that an employee who dies before retirement without having elected the Survivor Benefit Option will not have provided survivor benefits for a spouse.

■ Mrs. Lee first challenges the district court's holding that the Plan's normal payment method applies only to retirement benefits for employees who live to retirement. She maintains that the post-ERISA changes in the Plan dispensed with the election requirement, and that the normal retirement income payment method automatically provided survivor's benefits to

the spouse of employees who died before retirement.

The Plan specifically states that normal payments commence upon the employee's retirement, with survivor's benefits to the spouse of the deceased retired employee. In the summary plan description it is also stressed that this normal payment method is available "if you are legally married at the time of your retirement." Summary Plan Description at 14. J.A. at 176. We conclude that the spouse of an employee who dies before retirement does not have a claim to a retirement annuity under the normal payment method. There was no forfeiture of benefits to which Mrs. Lee is entitled because the Plan does not provide survivor annuity benefits to the spouse of a deceased active employee without an affirmative election of such benefits. Mr. Lee failed to make such an election. The district court, therefore, correctly held that Mrs. Lee was not entitled to annuity payments under the terms of the Plan.

We turn now to Mrs. Lee's alternative argument that the summary plan description did not adequately explain that an employee must affirmatively elect to provide survivor annuity payments to his or her spouse in the event of the employee's death before retirement. Mrs. Lee does not contend that her husband thought he had elected the Survivor Benefit Option when he had not. Rather, she contends that he believed the normal payment method, the 50% Survivor Benefit Option, would provide annuity payments to his spouse if he died before retirement.

ERISA requires plan administrators to provide plan participants and beneficiaries a summary plan description "written in a manner calculated to be understood by the average Plan participant and * * * sufficiently accurate and comprehensive to reasonably apprise such participants and beneficiaries of their rights and obligations under the plan." 29 U.S.C. § 1022(a) (1982). Regulations promulgated by the Department of Labor emphasize clear presentation of plan information so that participants are not misled, misinformed, or uninformed of plan terms. 29 C.F.R. § 2520.-102-2 (1985). The regulations also state that plan administrators, in drafting the summary plan description, "shall exercise continued judgment and discretion by taking into account such factors as the level of education and comprehension of the typical plan participant." *Id.* Finally, the regulations advocate use of simple sentences, clarifying examples and illustrations, and limitation of technical jargon in the summary plan description. *Id.*

At the outset we note that Union Electric could go a long way towards simplifying the Plan by using more distinctive labels for the options. Nonetheless, we cannot conclude that the summary plan description was deficient in explaining the need to elect the options and therefore violated ERISA's disclosure requirements.

The summary plan description states the normal and optional methods of retirement income payment in simple non-technical language. Under the heading "Normal Method of Payment if You Are Married" the summary plan description states:

If you are legally married *at the time of your retirement,* your normal method of payment of Retirement Income will be in the form of 50% Survivor Benefit Option under which your spouse is named as your survivor beneficiary. You will be paid a reduced Retirement Income and the amount of reduction will depend on the sex and age of your spouse. If your spouse survives you, your spouse will be paid 50% of the amount you were being paid, and for the remainder of his/her life.

If you do not want this normal method of payment, you will have the opportunity to elect not to be paid under the provisions of the 50% Survivor Benefit Option.

Summary Plan Description, J.A. at 268 (emphasis added). Under the heading "Optional Forms of Retirement Income" the Summary states:

The Plan provides optional forms of Retirement Income. These options *may be elected* by you, subject to the provisions of these options.

\*　　\*　　\*　　\*　　\*　　\*

(b) Survivor Benefit Option for employees age 55 to 65

This Survivor Benefit option enables you to provide 25%, 50%, 75% or 100% of your Retirement Income to be payable, after your death, to your spouse or any other person you name as your survivor beneficiary if you are willing to take a smaller Retirement Income *when you retire.* * * * You may not elect this option for a person other than your spouse if by such election your Retirement Income would be reduced to less than 51% of normal value at age 65.

Summary Plan Description (emphasis added), J.A. at 271. The information provided was supplemented by examples of the operation of the various options.

While the summary does not state explicitly that an employee's failure to choose an optional survivor benefit plan will leave his or her surviving spouse unprotected if the employee dies before retirement, we do not believe that section 1022(a) requires such a statement. The Summary states that employees must elect an alternative option to provide annuity payments to a surviving spouse in the event of the employee's death before retirement. It would be tautological to require it also to state that if the Option is not elected, its benefits will not be available.

The district court, having concluded that the summary plan description satisfied section 1022(a), further held that even if the summary description was not sufficiently clear, Mr. Lee was fully apprised of the relevant Plan provisions by the June 1974 letter and other pre-ERISA disclosures. The district court found that no evidence was introduced to show that Mr. Lee showed any interest in the Survivor Benefit Option. The court noted that although there was testimony that Mr. Lee had stated that Mrs. Lee would receive a percentage of his retirement benefits, on cross-examination, the witness stated that Mr. Lee had emphasized that Mrs. Lee would receive such benefits if and when he retired.

Our decision rests on our determination that the summary plan description adequately explained the need for an election. We think it is appropriate to note, however, that even had we found that the summary plan description was inadequate, the absence of any indication that Mr. Lee expressed any interest in the Survivor Benefit Option, despite the repeated opportunities to do so, would pose a significant barrier to recovery. To secure relief on the basis of a faulty summary plan description, the claimant must show some significant reliance on, or possible prejudice flowing from the summary. *See Govoni v. Bricklayers,* 732 F.2d 250, 252 (1st Cir.1984); *Hillis v. Waukesha Title Co., Inc.,* 576 F.Supp. 1103, 1109–10 (E.D.Wis.1983).

We hold that Mrs. Lee has no claim to survivor annuity payments because her husband did not elect the Survivor Benefit Option. The Plan required such an election and the summary plan description adequately explained the need for this election. We therefore affirm the district court's judgment.