## Murray v. Westinghouse Electric Corp.

*John Edward Calior,* for plaintiff.
*Lewis J. Carr Jr.* and *Dennis L. Derr,* for defendant.

FORNELLI, *P.J.,* July 7, 1993—This is an action in equity by Virginia Murray[1] against her deceased husband's employer, Westinghouse Electric Corporation, and Westinghouse's personnel practices supervisor, Sam Messina. Currently before this court for disposition is a motion for summary judgment filed by defendants, Westinghouse and Messina.

The plaintiff is the widow of Frank Murray, who was employed as a coil winder by the defendant Westinghouse. On or about December 7, 1979, decedent selected and signed a life annuity option of the Westinghouse Retirement Benefits Plan. This option provided that decedent

---

1. The plaintiff named in this action has since died, and on January 4, 1993, this court ordered this case terminated by the prothonotary pursuant to Rule of Judicial Administration 1901(c) unless, within 10 days of said order, the estate of the deceased plaintiff filed a petition to be substituted as a party in this matter. Notwithstanding plaintiff's failure to follow this order this court will consider defendant's motion for summary judgment. However, the failure to substitute may on its own be a basis for a judgment of non pros.

would receive $486.07 per month for life[2] with nothing payable to plaintiff after decedent's death. At the time the deceased elected the above-described life annuity option, two other retirement benefit options were available to the decedent, both of which provided for a lower monthly payment to the retired employee during his lifetime but also provided for payments to an employee's spouse after death. The decedent failed to elect the latter options, and on February 2, 1980, 57 days after signing the life annuity options, the decedent died.

On December 9, 1981, plaintiff filed a complaint in equity requesting that this court reform Westinghouse's retirement plan so as to allow the plaintiff to receive monthly payments under the third option, i.e., the "55 percent spouse survivor" option. Plaintiff specifically requested this court "to permit her to receive $243.29 per month for life, from February 2, 1980, plus whatever other relief the court deems proper, plus interest ... and costs." (complaint, last para.)

The plaintiff made a number of other allegations in her complaint which are recited in part as follows:

(1) that the "[d]ecedent should have opted and intended to opt for option 3—55 percent spouse survivor..." (complaint, para. 7);

(2) that when the life annuity was signed "decedent was taking powerful medications for the pain he was experiencing, to wit; Codeine and Darvon" (complaint, para. 12);

---

2. Plaintiff's complaint alleges the amount of this option was $486.07 per month while their defendant's motion for summary judgment avers that the amount of this option was $487.25 per month. Consequently, the precise amount of the annuity has not yet been determined. But it is not material to this determination.

(3) that "at said time, decedent was fully aware of the fact that he was dying of cancer";

(4) that "[d]ecedent had been told that he could not go back to work" (complaint, para. 14);

(5) that "[d]ecedent had been told that he was not going to make it" (complaint, para. 15);

(6) that "[d]ecedent did not know or could not know what he was doing on December 7, 1979, because of the pain he was experiencing and/or because of the medication he was taking on December 7, 1979" (complaint, para. 16);

(7) that "[d]efendants exerted undue influence, duress and coercion upon decedent in the making of the choice" (complaint, para. 19):

(8) that "[d]efendants were in a confidential relationship with decedent and further were required to deal with him in good faith and honesty in fact" (complaint, para. 21);

(9) that "[d]efendant was well aware of decedent's condition because of the medical bills which it had been paying for several months" (complaint, para. 23);

(10) that "[d]efendant took advantage of decedent's condition by having him sign an option which in the long run saved it thousands of dollars" (complaint, para. 24).[3]

The defendants filed an answer of denial to plaintiff's complaint on February 18, 1982. The defendant's sub-

---

3. The parties to this action have characterized the allegations in plaintiff's complaint as claims under Pennsylvania common law for breach of fiduciary duty, fraud and misrepresentation. The parties also agree that plaintiff's request for reformation at common law is based upon alleged mental incapacity to contract (see defendant's motion for summary judgment and plaintiff's answer thereto).

sequently filed a motion for summary judgment on December 14, 1987.[4]

The defendants contend in their motions for summary judgment that the claims set forth in plaintiff's complaint are pre-empted by the Employee Retirement Income Security Act (ERISA), 29 U.S.C. §1001 et seq. The defendants cite 29 U.S.C. §1144(a) and (c)(1) as statutory authority for this proposition.

The defendants further contend that "plaintiff's sole remedy is under provisions of ERISA" and that "[b]ased upon the pleadings and discovery record it is clear as a matter of law that the defendants have complied with all fiduciary obligations required by ERISA" (motion for summary judgment, paras. 7 and 8.) The defendants specifically aver that they fulfilled the ERISA requirement "that the employer and plan sponsor provide employees with a comprehensive explanation of its employee benefit plan," by supplying the decedent and all Westinghouse plan members with a Westinghouse Pension Plan Booklet which contained a comprehensive explanation of all retirement options. The defendants also rely on a November 1979 meeting between the decedent and the defendant, Messina, wherein Messina discussed the options available to decedent and gave the decedent a form employee retirement worksheet as a guide in his consideration of the various options, which the decedent took with him when he left the meeting. The defendants contend that these documents meet or exceed the requirements of ERISA.

Defendants also aver that since plaintiff's claims are pre-empted by ERISA this court does not have subject-matter jurisdiction and should dismiss this action

---

4. An identical motion for summary judgment was refiled by the defendants' new counsel of record on January 26, 1993.

pursuant to Pa.R.C.P. 1032(2), which provides "that whenever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter ... the court shall dismiss the action." (Supplemental brief in support of defendants' motion for a summary judgment, pp. 1 and 2.)

On January 27, 1988, plaintiff filed an answer to defendants' motion for summary judgment. Plaintiff argues in his brief in opposition to defendant's motion for summary judgment that the motion is improper since it is based upon oral testimony, i.e. deposition testimony of plaintiff and the defendant, Messina. Plaintiff cites *Nanty-Glo v. American Surety Co.,* 309 Pa. 236, 163 A. 523 (1932) in arguing that this oral testimony will not support entry of summary judgment since credibility is to be determined by a jury. Plaintiff argues that a jury must decide factual issues which rest on credibility such as "what exactly was discussed" at the meeting between Murray and the decedent, whether either of the defendants gave decedent a booklet or worksheet, and whether these documents satisfied the requirements of ERISA.

Plaintiff also argues in her brief that under Pa.R.C.P. 1030 the defendants cannot now raise an affirmative defense, i.e. pre-emption, which they failed to raise in new matter, and that the defendants' failure to plead said new matter results in the waiver of the affirmative defense under Pa.R.C.P. 1032. Finally, plaintiff argues the complaint contains adequate facts to establish a claim for a breach of fiduciary duty under ERISA and therefore withstands motion for summary judgment since the Federal Rules of Civil Procedure do not require fact pleading.

Rule 1035 of the Pennsylvania Rules of Civil Procedure provides, "[A]n entry of summary judgment

may be granted only in cases where the right is clear and free from doubt." *Consumer Party of Pennsylvania v. Commonwealth,* 510 Pa. 158, 174-75, 507 A.2d 323, 331 (1986) (citing collected cases). Under Rule 1035(b) "summary judgment should be granted only if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Id.* at 175, 507 A.2d at 331. Pa.R.C.P. 1035(d) also provides that:

"When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him."

A review of the applicable sections of ERISA, 29 U.S.C. §1001 et seq., reveals that Congress intended to pre-empt the application of state law to "employee benefit plans."[5] Section 1144(a) of ERISA broadly pre-empts "any and all state laws insofar as they may now or hereafter relate to any employee benefit plan...."[6] Section 1144(c)(1) expansively defines the term "state law" to include "all laws, decisions, rules, regulations, or other state action having the effect of law, of any state."

Pre-emption under section 1144 does not only apply to state statutory law. "The Supreme Court has broadly interpreted section 1144 to encompass any state law that

5. Title 29 U.S.C. §1002(2)(B)(3) defines "employee benefit plan" to include "an employee pension benefit plan." Consequently, this court finds the WRBP at issue in this case is governed by ERISA.

6. ERISA provides for limited exceptions to its broad presumption, but these exceptions are not applicable to this case.

has a 'connection with or reference to' an employee benefit plan." *Williams v. Wright,* 927 F.2d 1540, 1549 (11th Cir. 1991), quoting *Shaw v. Delta Air Lines Inc.,* 463 U.S. 85, 91, 103 S.Ct. 2890, 2900 (1983). "Thus, ERISA pre-empts all state laws insofar as they apply to employee benefit plans even if those laws do not expressly concern employee benefit plans and amount only to indirect regulation of such plans." *Williams,* 927 F.2d at 1549, quoting *Howard v. Parisian Inc.,* 807 F.2d 1560, 1563 (11th Cir. 1987). Consequently, section 1144 also pre-empts state common law claims. *Salomon v. Transamerica Occidental Life Insurance Company,* 801 F.2d 659, 660-61 (4th Cir. 1986) (pre-empting state common law claims for breach of contract and estoppel that related to an employee benefit plan). *Ogden v. Michigan Bell Telephone Co.,* 571 F. Supp. 520, 523-24 (E.D. Mich. 1983) (pre-empting a state common law claim for fraud).[7] This court finds that plaintiff's state common law claims are pre-empted by ERISA.

Although pre-empted under ERISA, plaintiff's state common law causes of action are cognizable under various ERISA sections.[8] Furthermore, this court has

---

7. The court in *Ogden,* 571 F. Supp. at 523, cited *Dependahl v. Falstaff Brewing Corp.,* 653 F.2d 1208 (8th Cir. 1981), *cert. den.,* 454 U.S. 968, 102 S.Ct. 512 (1970) as providing the majority view on the scope of pre-emption under ERISA. According to the holding in *Dependahl,* "[S]tate law claims are pre-empted if two conditions are satisfied: (1) Congress has indicated its intent to 'occupy the field' in the subject to be regulated; and (2) Congress has provided a remedy for the wrong alleged." *Ogden,* 571 F. Supp. at 523 (citing *Dependahl,* 653 F.2d at 1215-16).

8. Section 102 of ERISA provides that an administrator of an employee benefit plan must satisfy a duty of disclosure and reporting by requiring an administrator to furnish participants covered under the plan and beneficiaries receiving benefits under the plan with

subject-matter jurisdiction pursuant to ERISA, 29 U.S.C. §1132.[9]

Additional reasons also support a grant of defendants' motion for summary judgment. See *Prince v. Hartford Life and Accident Insurance Co.,* 780 F. Supp. 1069 (E.D. Va. 1991).[10] The defendants aver that "[b]ased

a summary plan description and certain prescribed information. 29 U.S.C. §1021(A)(1) and (2). ERISA further requires a fiduciary to "discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries...." 29 U.S.C. §1104. A person who is a fiduciary may be found liable under 29 U.S.C. §1109 for a breach of fiduciary duties under ERISA.

9. Section 1132(a)(1)(B) of ERISA allows a participant or beneficiary to bring a civil action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan."

Section 1132(e)(1) of ERISA provides in relevant part:

"State courts of competent jurisdiction and district courts of the United States shall have concurrent jurisdiction of actions under subsection (a)(1)(B) of this section."

Section 1132(a)(1)(B) of ERISA further provides that:

"A civil action may be brought by a participant or beneficiary to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan."

This court finds that plaintiff's claims, which are cognizable under ERISA, are also the type of action described in 29 U.S.C. §1132 and, therefore, this court has subject-matter jurisdiction of plaintiff's action.

10. In considering the defendant's motion for summary judgment the court in *Prince* determined that plaintiff's state common law claim for breach of contract was pre-empted by ERISA. That court also decided that "plaintiff's failure to state a claim under ERISA [was] not sufficient basis for the dismissal of plaintiff's cause of action," since "they also implicitly plead causes of action under ERISA." *Prince,* 780 F. Supp. at 1071. The court in *Prince* therefore considered plaintiff's state cause of action for breach of contract

upon the pleadings and discovery record it is clear as a matter of law that [they] have complied with all fiduciary obligations required by ERISA" (motion for summary judgment, para. 8). The defendants rely, in part, on the Westinghouse Pension Plan Booklet, which they allege was supplied to the decedent as providing a "comprehensive explanation of all retirement options ... involved in this case." Defendants argue that furnishing this book to the decedent satisfied its fiduciary obligation under ERISA (motion for summary judgment, para. 9 and the attached exhibit A). They also supplied a form employee retirement worksheet as a guide of the various options from which decedent selected.

In *Allen v. Atlantic Richfield Retirement Plan,* 480 F.Supp. 848 (E.D. Pa. 1979) the court concluded as a matter of law that the defendants there had satisfied their fiduciary duty owed to their employees under ERISA, 29 U.S.C. §1104 by providing its employees with a booklet explaining its retirement plan. The court in *Allen* granted the defendant's motion for summary judgment and recognized that "part of the fiduciary's duty under section 1104 is to provide employees with a comprehensive explanation of the contents of the plan" which could be accomplished "through the use of an explanatory booklet ... that adequately explained the plan and the bases [sic] for disqualification" *Id.* at 851.[11]

---

as "an action to recover benefits owed or to enforce employee's rights under 29 U.S.C. §1104(A)(1)(B) or section 1132." *Id.* at 1071. The court in *Prince* went on to grant defendant's motion for summary judgment on other grounds. *Id.* at 1072.

11. In *Allen,* the plaintiff attempted "to recover death benefits allegedly due to her or the estate of her late husband which she [claimed] the defendants, Atlantic Richfield Co. (ARCO) and the Atlantic retirement plan wrongfully refused to pay." *Allen,* 480 F.

Westinghouse's booklet at page 35 and under the heading "How Pensions Are Paid" provides the employee with the following information regarding the selection of retirement benefit options:

"When you retire you may elect one of the following forms of payment:

"(1) A monthly pension payable for a [sic] long as you live.

"(2) A reduced monthly pension payable for as long as you live, with the guarantee that if your spouse outlives you, 55 percent of your reduced pension will be continued for the life of your spouse.

"(3) A reduced monthly pension payable for as long as you live, with the guarantee if your spouse outlives

---

Supp. at 849. Following her husband's death the plan failed to pay plaintiff "the lump-sum benefit provided for the beneficiary of a deceased employee who elected disability retirement. The plan refused to tender this sum, because the regulations of the plan require that the election of the disability retirement option be made not less than 30 days before the death of the employee, whereas [plaintiff's husband] died within a week of making the election." *Id.* at 849. The plaintiff in *Allen* claimed that the defendants breached their fiduciary duty under section 1104 by failing to specifically alert plaintiff's husband of "the possibility that he might run afoul of the 30-day waiting period after applying for disability retirement," when defendants were aware of their employee's serious medical problem. *Id.* at 849 and 851.

The court in *Allen* noted that the booklet contained "both a summary of the plan written in non-technical language, and the text of the plan itself in an appendix"; that the booklet was "arranged in an easy-to-read format, with a table of contents to refer readers to particular sections"; that the entire plan summary was only 20 pages in length; that "there was nothing 'misleading or incomprehensible' in the booklet's explanation of the waiting period," and that "an 'average and reasonable worker participant' could easily understand this requirement." *Id.* at 851.

you, 100 percent of your reduced pension will be continued for the life of your spouse.

"(4) A reduced monthly pension payable for as long as you live, with the guarantee that someone of your choice, other than your spouse, will receive 50 percent of your reduced pension for life, should that person outlive you.

"(5) A reduced monthly pension payable for as long as you live, with the guarantee someone of your choice, other than your spouse, will receive 100 percent of your reduced pension for life, should that person outlive you."

This section of the booklet also contains an example describing option 2 of the plan. (motion for summary judgment, attached exhibit A at 36).

The facts in *Allen* are analogous to the facts presented in this case. The explanation of the retirement benefit options provided in the booklet which Westinghouse furnished to the decedent is similar in effect to the one furnished in *Allen*. The booklet in this case contained a comprehensive explanation of the contents of the plan presented in non-technical language and was arranged in an easy-to-read format. The booklet also provided a table of contents, was not misleading or incomprehensible, was relatively short in length, contained the actual text of the plan, and was written so that an average and reasonable worker participant could easily understand the various retirement options.

This court finds as a matter of law that the booklet and worksheet furnished to the decedent fulfilled both the defendant's fiduciary obligations under 29 U.S.C. §1104 and the defendant's duty of disclosure under 29 U.S.C. §1022(a). See *Lee v. Union Electric Co.*, 789 F.2d 1303 (8th Cir. 1986) (finding that defendants' summary plan description satisfied section 1022(a)).

Consequently, defendants' motion for summary judgment is granted.[12]

Hence this

### ORDER

And now, July 7, 1993, defendant's motion for summary judgment is granted.

---

12. The court notes that plaintiff has filed no affidavits, depositions, admission or answers to interrogatories to support by sufficient competent evidence the allegations in the complaint of the decedent's actual incapacity by reason of medications or his disease which presented an intelligent and knowing choice of options. But even if that presented were sufficient and not just speculation, plaintiff would further have to establish defendants' knowledge of lack of mental capacity at the time of decedents' option choice to properly raise an issue of breach of fiduciary duties. There is no evidence of that. With both decedent and his widow deceased it is understandable why such evidence, if it ever existed, was not forthcoming in opposition to the motion for summary judgment.